

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
ATTORNEY GENERAL

January 23, 1958

Mr. A. C. Spencer
Executive Director
Texas State Soil Conservation
  Board
1012 First National Bank Building
Temple, Texas

Opinion No. WW-346

Re: Are soil conserva-
    tion districts, as
    authorized in H.B.
    444, Acts of the 47th
    Legislature, author-
    ized to lease heavy
    equipment such as bull-
    dozers, and maintain-
    ers, employ operators
    and use such equipment
    in carrying out soil
    conservation practices
    within the boundaries
    of the local soil con-
    servation district?
    The District would
    charge the landowners
    for the use of such
Dear Mr. Spencer:                    equipment.

        You have requested our opinion on whether soil con-
servation districts, as authorized in House Bill 444, Acts,
47th Legislature, Regular Session, 1941, chapter 308, pages
491-511 (Article 165a-4, V.C.S.); and hereinafter referred to
as the State Soil Conservation Law, are authorized to lease
heavy equipment such as bulldozers and maintainers, employ
operators and use such equipment in carrying out soil con-
servation districts, and whether such districts could charge
the landowners for the use of such equipment.

        The following provisions of Subsections (1), (2),
(3), (4), and (9) of Section 7 of the State Soil Conservation
Law are pertinent to your inquiry.

"A Soil Conservation District
. . . and the supervisors thereof shall
have the following powers, . . .:

"(1) To carry out preventive
and control measures within the district
including, but not limited to, engineering
operations, methods of cultivation, the
growing of vegetation, changes in use of
land, and the measures listed in Subsection
o /sic/ of Section 2 of this Act, . . . on
any other lands within the district upon
obtaining the consent of the occupiers of
such lands or the necessary rights or
interest in such lands;

"(2) To cooperate or enter into
agreements with, and, within the limits
of appropriations duly made available to it
by law, to furnish financial or other aid
to, . . . any occupier of lands within the
district, subject to such conditions as the
supervisors may deem necessary to advance
the purposes of this Act;

"(3) . . . and to sell, lease,
or otherwise dispose of any of its pro-
perty . . . in furtherance of the purposes
and the provisions of this Act;

"(4) To make available, on such
terms as it shall prescribe, to land
occupiers within the districts, agricultural
and engineering machinery and equipment,
fertilizer, seeds and seedlings, and such
other material or equipment, as will assist
such land occupiers to carry on operations
upon their lands for the conservation of
soil resources and for the prevention and
control of soil erosion;

"   . . .

"(9) As a condition to the ex-
tending of any benefits under this Act to,
or the performance of work upon, any lands
not owned or controlled by this State or
any of its agencies, the supervisors may
require contributions in the form of services,
materials, or otherwise to any operation con-
ferring such benefits, and may require land

occupiers to enter into and perform such
agreements or covenants as to the permanent
use of such lands as will tend to prevent
or control erosion thereon." (Emphasis ours)

Subsection (14) of Section 3 of the State Soil Con-
servation Law defines "Land Occupier" or "Occupiers of Land"
as "any person, firm or corporation who shall hold title to or
be in possession of any lands lying within a district organized
under the provisions of this Act, whether as owner, lessee,
renter, tenant or otherwise".

It is noted that the stated intent of Subsection (1)
of Section 7 of the State Soil Conservation Law, supra, is to
incorporate by reference certain measures listed in Subsection
o of Section 2 of the Act; however, inasmuch as Section 2 does
not contain a Subsection o, the reference is erroneous. This
reference in the enrolled bill of the Act (H.B. No. 444, 47th
Legislature, R.S., 1941, Ch. 308, p. 1364) is to "Subsection
c of Section 2". Furthermore, in the enrolled bill, the third
subsection of Section 2 is labeled "(c)". In view of the typo-
graphical error in the printed volume of General and Special
Laws, 47th Legislature, Regular Session, 1941, and the form
inconsistency in the enrolled bill, it is obvious that the
reference in question correctly should be to Subsection (c)
of Section 2 of the Act.

Subsections (1) and (2) of Section 7 of the State Soil
Conservation Law, supra, authorize the supervisors of local soil
conservation districts to undertake, in cooperation with the
occupiers of private lands, the measures specified in the Act
or other measures which achieve the purposes of the Act. The
scope of this general directive, in our opinion, is of suffi-
cient breadth to authorize the supervisors of local soil con-
servation districts to lease machinery and equipment belonging
to the district to anyone classified as an "occupier of land",
for use on lands lying within the district, provided such use
accomplishes one or more of the objectives of the State Soil
Conservation Law. This leasing authority is further supported
by Subsection (3) of Section 7, supra, and also by the language
of Subsection (4) of Section 7, supra, wherein the supervisors
are authorized "to make available" to land occupiers, agricul-
tural and engineering machinery and equipment to be used in
the conservation of soil resources and for the prevention and
control of soil erosion.

It is clear that if certain types of the equipment
and machinery used to carry out many of these measures are to
achieve the desired results, the services of skilled operators
will be required. It is not difficult to visualize that in
many instances, it would be a vain deed should the supervisors
lease such equipment and not provide the lessee with an operator

capable of running the machine in such a manner as would insure that it performed the work for which it was designed. In our opinion, the aforementioned Subsections (1), (2) and (4) of Section 7 of the Act, supra, impliedly authorize the supervisors to furnish qualified operators of the machinery and equipment leased to the occupiers of private lands. Statutes impliedly authorize whatever is necessary to execute their commands. Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519 (1911).

Although the purposes of the State Soil Conservation Law are served the use of equipment and machinery of the local districts on private lands, it is obvious that the accomplishment of such objectives also confers a direct benefit to these lands. Both the provisions of Subsections (4) and (9) of Section 7 of the Act, supra, authorize the local district supervisors to charge the lessees a consideration for the use of such equipment on their lands. Under these provisions, the supervisors of each soil conservation district are permitted to determine the amount of consideration that is to be charged for the lease of its equipment.

## SUMMARY

The supervisors of local soil conservation districts, under the provisions of the State Soil Conservation Law, (House Bill 444, Acts, 47th Leg., R.S., 1941, ch. 308, pp. 491-511), are authorized to lease equipment and machinery belonging to the district to the occupiers of private lands, for uses on such lands, lying within the boundaries of the district, which conform with the purposes of this law and in conjunction therewith, to furnish operators for such

leased equipment and to
charge the land occupier
for its use.

Yours very truly,

WILL WILSON
Attorney General of Texas

By David R. Thomas
David R. Thomas
Assistant

DRT:wam

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

B. H. Timmins, Jr.

Mary Kate Wall

Milton Richardson

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert